3015870

FILED

# UNITED STATES DISTRICT COURT OF
# SOUTH BEND INDIANA

16 SEP -2 PM 1:30

Mr. James Cross  Pro'se )
                            )       CIVIL ACTION
      Plaintiff      )
                             )
   Vs.             )     No. 3:16 cv 588
                             )    COMPLAINT FOR RACE DISCRMINATION
                             )    DEMAND FOR JURY TRIAL
                             )
  Nike Inc.         )
      Defendant

## ALLEGATION COMPLAINT

Plaintiff James Cross ( hereinafter referred to as Cross')
demand a jury trial and complaint against the Defendant as
follows:

## THE PARTIES

1.    Plaintiff's Mr. Cross is an black inventor residing at 120 Glencove Dr.
      Michigan City, IN 46360.

2.    On information and belief, Defendant, Nike Inc. (hereinafter referred to as
      Nike Inc.') is a corporation organized under the law of Oregon and Indiana
      having two places of businesses at Nike Factory Store located at 917
      Lighthouse Place, Michigan City, IN 46360 , and Nike Inc.
      Headquarters located at One Bowerman Drive Beaverton,
      Oregon 97005-6453

(1)

## PERSONAL JURISDICTION AND VENUE

3. This action  arises under the Title VII and by Section 1981 of the Civil

   Rights Act of 1964 Prohibits Race Discrimination Under Laws of the United

   States of America. Under Civil Rights Act of Title 42, US Code §

   1981(a)(1) Subsection (b) section 706 Civil Right Act of 1964.

   Under Federal laws 42 U.S.C Section 1983 and 1985

   This Court has **personal jurisdiction** of this action under Act 28 U.C. §§

   1331 and 1338 (a).

4. Venue is proper in this judicial district pursuant to 28 U.S.C §§ 1391 and

   1400(b)

   ## STATUE OF LIMITATION

5. The Plaintiff's statue is proper under law of Title VII and by Section

   1981 of the Civil Rights Act 1964. Plaintiff has 4 years from the dated

   07/19/16  of the discriminatory act to file his lawsuit **Exhibit 2,p1,2,3. Exh 12**

   # INTRODUCTION

6. The Defendants allegations for the Plaintiff's two

   design patents in letter dated: December 18, 2015

   stated this matter is closed. The Defendant clarified to Plaintiff's

   reference patent in question Mr. Beard ( U.S Patent No.

   3,281,863, "Garment Construction") being an expired utility patent,

   not a design patent. **Exhibit 00, 02, 03.  Exh1 p1,2**

   (2)

7. The Plaintiff's allegation Letter mailed of Tent for race

   discrimination on 07/19/16 referenced  to Defendant for non-

   consideration of Plaintiff' trademark logo Reg. No.4,343,916.

8. The Defendant received letter on 07/22/16 **Exhibit 01.EXH 2p1,2,3.Exh 12**

9. Plaintiff, Cross repeat and incorporate herein the entirety of the

   allegations contained in paragraphs 1 through 8 above.

### Plaintiff Claims for Title VII and by Section 1981 of the Civil Rights Act  of 1964 Prohibits Race Discrimination  Willful violations; false and misleading statements 15 U.S. Code § 78ff - Penalties Indiana Deceptive Trade laws (35-43-5-3 2010 Indiana Code TITLE 23. BUSINESS AND OTHER ASSOCICATIONS ARTICLE 19. INDIANA UNIFORM SECURITIES ACT CHAPTER 5. FRAUD AND LIABILITIES

### CLAIM FOR RACE DISCRIMINATION

### COUNT 1

10. The Plaintiff claims that the Defendant intentionally used the

    company's policy to protect the company from appearing to be

    discriminatory on the basis of race.  However, the Defendant's

    dishonest statements and fraudulent conduct are deceptive

    trade practices and are contrary to the company's policy and as

(3)

a result has had an unlawful adverse impact on the Plaintiff on account of the Plantiff's race or color, by denying the Plaintiff, a black inventor the same effective product trade mark submission opportunities as afforded the Caucasians. **Exh 1p1,2**

## COUNT 2

11. The Plaintiff claims the Defendant has a historic trail that failed to follow Defendant's own statement to follow its company's policy "in strict accord," over several years starting around 1984, up to and including 1990, 1997, 2012, 2015 and any other similar matters therein. The Defendant did prefer Caucasion's trademarks, logos, marketing suggestions, out-side product submissions of ideas etc. that did not meet the guidelines listed in the company's policy anymore than the Plaintiff's. Therefore, the Plaintiff was denied the same submission opportunities. **Exh 5p1,2. Exh**

**6p1,2,3. Exh7 p1,2,3. Exh 8p1,2**

## COUNT 3

12. Plaintiff claims the Defendant refused Plaintiff's Design patent for product submission on the basis of the company's policy, letter dated: 12-18-15, "NIKE's refusal to consider your designs is "in strict accord" with the company's

(4)

policy regarding outside submissions of ideas." On the basis of the same company policy Defendant stated : "NIKE will not consider submissions of designs (including design patents), artwork, advertising, marketing suggestions, copyright registrations, slogans, logos, brands, trademarks, or similar matters. Product submissions that do not meet the guidelines of our program are not considered."**Exh1p1,2 Exh 4 p1,2**

### COUNT 4

13.  The Plaintiff claims the Defendant showed indifference in preferring the Caucasians over the Plaintiff by considering and accepting the Caucasians trademark out-side submissions without adhereing to its company policy "in strict accord." However, the Defendant did follow its company's policy "in strict accord" not to consider the Plaintiff's trademark out-side submissions. Both parties, the Plaintiff and the Caucasians submitted trademarks and logos outside the company's policy guidelines. But, the Defendant's discriminatory business practices intentionally favored one race over the other. See company's policy Exhibits **1 p1,2. Exh 5p1. Exh 6p1,2,3. Exh7 p1,2,3. Exh 8p1,2**

(5)

## COUNT 5

14. Plaintiff, claims that Defendant's willingly and wantonly circumvented the Plaintiff's due process in submitting out-side trademark submissions by use of its company's policy not to consider such submissions.  The Defendant knowingly opened up the opportunity to prefer Caucasians out- side trademark submissions without adhereing to the company policy that acted as a barrier to keep out the undesireables. The Defendant's discriminatory business practices occurred on numerous occasions considering, accepting and purchasing 7 Caucasian out- side trademark submissions in 1984,1990, 1997, 2012, and 2015, against the Defendant's own statement to follow "in strict accord" its company policy shows unlawful intentional discrimination against the Plaintiff.  Exh 4p1,2,3 **Exh 5p1. Exh 6p1,2,3.  Exh7 p1,2,3.  Exh 8p1,2**

## COUNT 6

15. Plaintiff claims that Defendant failed to follow its own policies not one time but 7 times, before and after making the statement that the Defendant followed the company's policy "in strict accord," in 1984, up and including 1997, and 1990,  2012, and 2015 . The Plaintiff claims the Defendant's concealed discrimination by using the company's policy. The Plaintiff claims

(6)

herein to unveil the Defendant's deceitful, willful and wanton unlawful discriminatory business practices for the deceitful purpose of deceiving minorities.  The Plaintiff claims the Defendant has deceived the Plaintiff of an equal opportunity to submit outside trademark submissions by using the company policy in a fraudulent and deceitful manner.  The Defendant stated and defended in writing to follow the company's policy "in strict accord," when the Defendant knew the statement was untrue. The Plaintiff claims the Defendant own dishonest, deceitful, willful and wanton biased business practices has exposed the Defendant's true intent to prefer one race over the other.

**Exh 5p1. Exh 6p1,2,3.  Exh7 p1,2,3.  Exh 8p1,2**

## COUNT 7

16. The Plaintiff claims Defendant also failed to honor company policy for their Product Submission Program against the Plaintiff.

**Exhibit 4p1**

## COUNT 8

17.  Plaintiff Cross claims the Defendant knew that Plaintiff was an Black Inventor in letter dated 12-10-12.  **Exh 3p1,2,3**

(7)

18. Plaintiff Cross claims the Defendant rejected Plaintiff's design patent for product submission on the basis of the company's policy, letter dated: 12-18-15, "NIKE's refusal to consider your designs is in strict accord with the company's policy regarding outside submissions of ideas."  Yet, on the basis of same company policy, "**NIKE will not consider submissions of designs(including design patents)**, artwork, advertising, marketing suggestions, copyright registrations, slogans, logos, brands, trademarks, or similar matters. Product submissions that do not meet the guidelines of our program are not considered." The Defendant preferred using 7 Caucasian trademark and logos out-side submission ideas that did not meet the company's guidelines.  **Exhibit 1,p1,2  Exh 5p1. Exh 6p1,2,3.  Exh7 p1,2,3.**

**Exh 8p1,2**

## COUNT 9

19. Plaintiff claims that Defendant's showed racial discrimination because Defendant has a strong history to not follow the company's policy "in strict accord" with all races. The Defendant racially biased and fraudulent conduct using the company's policy as a deterrent to eliminate minorities out-side trademark

(8)

and logos products and prefer the Caucasian race, the

Defendant therefore, violates the  Civil Rights Act making
racial bias clear against the Plaintiff.  **Exh 5p1. Exh 6p1,2,3.**

**Exh7 p1,2,3.  Exh 8p1,2**

### COUNT 10

20.  Plaintiff claims that Defendant prefers not to consider Plaintiff's

trademark or logo based on the Defendant's strict adherence to

willfully and wantonly misrepresent its company's policy regarding

out-side trademark submissions. **Exhibit 1p1,2**

### COUNT 11

21.  Plaintiff claims the Defendant's willful, wanton, and fraudulent

business practices herein, making formal written statements to

follow its own policy concerning Plaintiff's out-side trademark

submissions and failing to do the same with the Caucasians.

The Plaintiff now disputes the creditability of the Defendant's

statement made in letter dated: December 18, 2015; "NIKE now

considers this matter closed. You should refrain from contacting

us again regarding  this or any other matters in the future."

.**Exhibit 1 p1,2,**

(9)

## COUNT 12

23.  Plaintiff claims Defendant  have violated **Title VII and by**

**Section1981 of the Civil  Rights Act of 1964.**  Indiana

Deceptive Trade Practice Law, and policy

obligations 2010 Indiana Code TITLE 23. BUSINESS AND
OTHER ASSOCIATIONS ARTICLE 19. INDIANA UNIFORM
SECURITIES ACT CHAPTER 5. FRAUD AND LIABILITIES, and
Willful violations; false and misleading statements

15 U.S. Code § 78ff – Penalties by making intimidating,

threatening, and misleading statements  about their Trademark

and logos Product Submission Program.  **Exhibit1p2.  4**

## COUNT 14

25.  Plaintiff Cross, has been damaged by such acts of race

discrimination by the Defendant's Under Title VII and by

Section 1981 of the CivilRights Act of 1964

## COUNT 15

26.  Plaintiffs, Cross repeat and incorporate herein the entirety

of the allegations contained in paragraphs 1 through 24

above.

**(10)**

**AUTHENTIC Z-ZIP-A-TEE TRADEMARK AND LOGO  EXHIBIT 0 p.4**



26.        **NIKE INC. OUTSIDE SUBMISSION POLICY**

NIKE only considers ideas that are embodied in an issued utility patent, utility model, or a pending non-provisional utility patent application that has been filed with an appropriate governmental agency. **NIKE will not consider submissions of designs (including design patents)**, artwork, advertising, marketing suggestions, copyright registrations, slogans, logos, brands, trademarks, or similar matters.  Product submissions that do not meet the guidelines of our program are not considered.

**Exh 4,p1,2,3, Exh 10, 11**

**(11)**

## 27. <u>NIKE INC. ACCEPT 7 OUTSIDE TRADEMARK SUBMISSIONS</u>

Plaintiff claims that Nike Inc. licensed a (Caucasian) Mr. Jacobus Rentmeester **photo logos** for $15,000 for "slide presentations only in 1984.  The invoice for the $15,000 payment indicated that the photo was to be used in "North America only" for 2 years, with all other rights reserved by Mr. Rentmeester.   Please see the attachment below.  **Mr. Rentmeester Copyright** Number see **Exhibit 5**

**Copyright # VA00019373 23.**



(12)

28. Plaintiff claims NIKE INC.  had bought exclusive right to license for commercial purposes in 1997. Nike again paid for 8 more years in 2016 for the use of the **names**, **symbols, emblems, designs, logo, identifications** and uniforms of the NBA which is a (Caucasian Corporation).   NIKE INC. License Deal with the NBA PAID **1 BILLION DOLLARS**. See JIN **EXHIBIT 6** LEE/BLOOMBERG  **NATIONAL BASKETBALL ASSOICATION TRADEMARK AND LOGO.**



(13)

29. Plaintiff claims NIKE INC. had bought exclusive right to license for commercial purposes in 1990. Nike again paid for 5 more years in 2012 for the use of the **names, symbols, emblems, designs, logo, trademark,** to identifications and uniforms of the NFL which is a (Caucasian Corporation). Sport Business this week detailing the league's revenue sources said Nike PAID **$1.1 billion** to land the lucrative NFL apparel sponsorship. **See Exhibit 7**



**NATIONAL FOOTBALL LEAGUE TRADEMARK AND LOGO**

(14)

30. Plaintiff claims NIKE INC. bought exclusive right
to license for commercial purpose for the use of the
**names, symbols, emblems, designs**, **logo, trademark**
identifications and uniforms of the MLB which is a
(Caucasian Corporation).  NIKE INC. LICENSE MLB LEAGUE

 

<u>MAJOR LEAGUE BASEBALL TRADEMARK AND LOGO</u> **Exhibit 8**

(15)







**COLLEGIATE LICENSED PRODUCT**

**TRADEMARK AND LOGO  Exhibit 9**

31.  Plaintiff claims that Nike Inc. bought exclusive rights to license for commercial purposes for the **use of the names, symbols, emblems, designs, logo, trademark** identifications and uniforms of the which is a Collegiate company a (Caucasian Corporation).  Collegiate LICENSE with NIKE INC.

(16)

# PRAYER FOR RELIEF

Wherefore, The Plaintiff, Cross prays for Judgment against the Defendant

on all counts and for the following claims for relief.

**Title VII and by Section 1981 of the Civil Rights Act of 1964.**
**Willful violations; false and misleading statements**
15 U.S. Code § 78ff - Penalties
**The Indiana Deceptive Trade laws (35-43-5-3**
**2010 Indiana Code TITLE 23. BUSINESS AND OTHER**
**ASSOCIATIONS ARTICLE 19. INDIANA UNIFORM SECURITIES**
**ACT CHAPTER 5. FRAUD AND LIABILITIES**

## CLAIM FOR RACE DISCRIMINATION

. A.  The Plaintiff Cross claims that the Defendant intentionally used the

company's policy to protect the company from appearing to be

discriminatory on the basis of race.  However, the Defendant's

dishonest statements and fraudulent unlawful business conduct

proves to be contrary to the company's policy and has had an

unlawful adverse impact on the Plaintiff, denying the Plaintiff, the

same effective product trademark submission opportunities as the

Caucasians.

(17)

B.   The Plaintiff claims the Defendant has a history of failing to follow "in strict accord" its own company policies concerning Caucasians trademarks, logos, marketing suggestions, outside product submissions of ideas etc. that does not meet the guidelines listed in the company's policy since1984, and includes 1990, 1997, 2012, 2015 and any other similar matters therein, but did use the company policy to reject the Plaintiff the same opportunities.

C.   Plaintiff claims that Defendant failed to follow its own policies not one time but 7 times, before and after making the statement that the Defendant followed the company's policy "in strict accord," in 1984, up and including 1997, and 1990, 2012, and 2015. The Plaintiff claims the Defendant's concealed discrimination by using the company's policy. The Plaintiff claims herein to  unveil the Defendant's deceitful, willful and wanton unlawful discriminatory business practices for the deceitful purpose of deceiving minorities.  The Plaintiff claims the Defendant has deceived the Plaintiff of an equal opportunity to submit outside trademark submissions by using the company policy in a fraudulent and deceitful manner.

(18)

The Defendant stated and defended in writing to follow the company's policy "in strict accord," when the Defendant knew the statement was untrue. The Plaintiff claims the Defendant's own dishonest, deceitful, willful and wanton conduct has exposed the Defendant's fraudulent business practices that does intentionally prefer one race over the other.

D.  The Plaintiff claims the Defendant did consider 7 Caucasian trademark and logos outside product submission ideas that did not meet the company's detailed guidelines. The Plaintiff was refused consideration and the Caucasians was preferred and accepted.

E.  Plaintiff Cross claims upon Defendant learning that Plaintiff had submitted letter on 12/10/12 stating the Plaintiff was a Black Inventor, the Defendant refused to accept Plaintiff's trademark and logo for product submission by upholding company policy. However, the Defendant's decision to override company policy and perfer 7 Caucasian trademark and logos out-side submission idea, showed the Defendant indifference to people of color.

(19)

F.  Plaintiff claims that Defendant fails to follow its own policies by perferring 7 Caucasian trademark and logos against their policy since 1984,1990, 1997,2015. **Exhibit 4,5, 6p1-3. 7p.1-3**

G.  Plaintiff claims the Defendant has violated  The Indiana Deceptive Trade laws (35-43-5-), Willful violations; false and misleading statements 15 U.S. Code § 78ff – by company policy making misleading statements about their Trademark and Logos Product Submission Program. **Exhibit  4**

H.  Plaintiff claims violated **Title VII and by Section  1981 of the Civil Rights Act of 1964 Defendant** has Violated Indiana Deceptive Trade laws (35-43-5-3  against the Plaintiff by intimidating, threatening, and making misleading statements on letter dated 12/18/15 about their company policy.  **Exhibit 1p1-2**

I.  The Plaintiff claims Defendant also failed to honor company policy for Plaintiff Trademark, and logo Product Submission. **Exhibit 4 p1,2,3,4**

J.  Plaintiff Cross claims that Defendant's motive was to use the company's policy to mislead minorities from due process from submitting out-side submissions. Defendant's policy did

(20)

not interfere with Defendant's decision from preferring 7

out- side trademark or logo submission by Caucasian

members in 1984,1990,2012, and 2015.**Exhibit 5, 6p1-3,7p1-3-8p1,2,3**

K.   Plaintiff claims that Defendant failed to consider James

Cross, who is Black Inventor and then subsequently

denied him, because of Plaintiff's race. **Exhibit 3**

L.   Plaintiff Cross claims the Defendant rejected Plaintiff's design

patent for product submission on the basis of the company's

policy, letter dated: 12-18-15, "NIKE's refusal to consider your

designs is in strict accord with the company's policy regarding

outside submissions of ideas."  In addition, same

company policy, "**<u>NIKE will not consider submissions of</u>**

**<u>designs(including design patents)</u>**, artwork, advertising,

marketing suggestions, copyright registrations, slogans, logos,

brands, trademarks, or similar matters. Product submissions

that do not meet the guidelines of our program are not

considered."  The Defendant preferred 7 Caucasian trademark

and logos out- side submission ideas that did not meet the

company's guidelines over the Plaintiff. **Exhibit 1p1,2. 4,5,6 p1-3.-7p.1-3**

(21)

M.  Plaintiff claims the Defendant failed to follow its own

policy concerning Plaintiff's trademark out-side submissions.

Therefore,  Plaintiff disputes the Defendant's statement made

in letter Dated: December 18, 2015; "NIKE now considers this

matter closed.  You should refrain from contacting us again

regarding this or any other matters in the future"  **Exhibit 1p1,2**

N.  Plaintiff Cross claims upon Defendant  receiving information that

Plaintiff was Black Inventor on 12/10/12.   The Defendant refused

to accept Plaintiff trademark and logo for product submission. The

Defendant's did override the company's strict adherence to company

policy and perferred 7 Caucasian trademark and logos out-side

submission ideas, discriminating against the Plaintiff, staying "in strict

accord" to the Plaintiff's out-side trademark submission.

O .  Plaintiff claims that Defendant showed racially biased

discrimination because Defendant has a strong history to not

follow the company's policy "in strict accord" in the same

manner with all races. The Defendant racially biased and fraudulent

business conduct using the company's policy proved to be

a successful deterrent to

(22)

eliminate the Plaintiff, a minority's out-side trademark submission.   Plaintiff claims that Defendant refusal to consider James Cross Z-Zip-A-Tee trademark logo based on their strict false misrepresentation of its company's policy regarding trademark, and logos out-side submission is unlawful and discriminatory business practices.

Q.   As Plaintiff's claims actions do not constitute a violation of Defendant company policy such actions by Defendant are in violation of Plaintiff Title VII and by Section 1981 of the Civil Rights Act of 1964.  Under 2010 Indiana Code

TITLE 23. BUSINESS AND OTHER ASSOCIATIONS ARTICLE 19.

INDIANA UNIFORM SECURITIES ACT CHAPTER 5. FRAUD AND

LIABILITIES. The Indiana Deceptive Trade laws (35-43-5-3

Willful violations; false and misleading statements

15 U.S. Code § 78ff – Penalties.

R.   Plaintiff be granted a declaratory judgment under Title VII and by Section 1981 of the Civil Rights Act of 1964 respect to Defendant's allegations of company policy.

(23)

S.   Plaintiff be granted an immediate and permanent

injunction preventing Defendant from interfering with

Plaintiff's business; and in the alternative, that

T.   Plaintiff's be awarded unspecified monetary damage

included lost profit and benefit of ($500,000,000.00)

Five Hundred Million Dollars for each time Defendant

use out-side trademark submission that Defendant

accepted under their company policy.

U.   The Plaintiff be award punitive damages as

allowed in subsection (b) of this section, in addition

to any relief authorized by section 706(g) of the

Civil Rights Act of 1964. _Willful violations; false and

misleading statements  15 U.S. Code § 78ff - Penalties

V.   Plaintiff ask that the jury awards punitive damages to

the Sum of One Billion Dollars. ($1,000,000,000.00)

because the Defendant's intentional willfull and

(24)

wanton, egregiously, and insidious unlawful business

practices .

W.   Award of Cross' costs and expenses, and

X.    Such other and further relief as this Court matter

proper, just and equitable.

Y.    Any other remedy this Court determines is just.

Z.    The Plaintiff prays for trial by jury.


I hereby declare under penalty of perjury that the foregoing is true

and correct.    Executed Michigan City, Indiana on 09/02/16

James Cross Pro'se
120 Glencove Dr.
Michigan City, IN 46360
219-879-1620
2195613251
zipatee55@att.net  or zipatee60@att.net

(25)

## **CERTIFICATE OF SERVICE**

I hereby certify that on 02 day of September 2016, I caused a copy of the foregoing document to be mailed by United States Postal Service to the following participants:

Mr. Brian Forgarty
Nike Inc.
One Bowerman Drive
Beaverton, Oregon  97005

X *James Cross*
*120 Glencove Dr.*
*Michigan City, IN 46360*

(26)