UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES CROSS,                          )
                                      )
                    Plaintiff         )
                                      )
          vs.                         )        CAUSE NO. 3:16-CV-588 RLM-MGG
                                      )
NIKE, INC.,                           )
                                      )
                    Defendant         )

<u>OPINION AND ORDER</u>

According to the complaint, James Cross submitted a T-shirt design and trademark ideas to Nike, Inc. in 2012, in hopes that Nike would pay him for the rights to use the design and trademark. When Nike returned his submissions without consideration, pursuant to its corporate policy on unsolicited submissions, Mr. Cross resubmitted his ideas in 2014 and sent samples to Nike in 2015, with the same results, and ultimately filed suit against Nike alleging that it discriminates against "black inventors" generally, and him specifically, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and federal and state securities fraud laws. Nike's fully-briefed motion to dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(6) and Mr. Cross's motion to amend currently pend before the court. The court grants the motion to dismiss and denies the motion to amend.

# I. Standard of Review

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, (1972)), and are liberally construed, Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001), but they too "must contain sufficient factual matter...to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. at 678; Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017). Federal Rule of Civil Procedure 8(a)(2), however, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. at 678, and legal conclusions aren't entitled to any presumption of truth. Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012). Mr. Cross offers little more in his complaint.

# II. Discussion

Briefly summarized, the complaint alleges that Mr. Cross designed and patented a "convertible T-shirt" (the Zip-A-Tee) and owns a registered trademark for that design ("Authentic Zip-A-Tee"). In 2012, he submitted his patented design idea and the trademark to Nike, in hopes of entering into a business relationship

with Nike. Nike has an express, written policy regarding the submission of unsolicited ideas, that provides as follows:

> To submit an idea to Nike, you must have a patent for your idea. If you'd like information about patenting your idea, consult a patent attorney for assistance.
>
> Nike only considers ideas that are embodied in an issued utility patent, utility model, or a pending non-provisional utility patent application that has been filed with an appropriate governmental agency. Nike will not consider submissions of designs (including design patents), artwork, advertising, marketing suggestions, copyright registrations, slogans, logos, brands, trademarks, or similar matters.
>
> Product submissions that do not meet the guidelines of our program will be returned to you without consideration.

When Mr. Cross submitted his patented "Zip-A-Tee" design idea and "Authentic Zip-A-Tee" trademark to Nike in 2012, 2014, and 2015, Nike returned his submissions without consideration based on its stated policy. Mr. Cross sent letters to Nike in 2015 and 2016, expressing his belief that its decision was motivated by racial bias, and demanding that: (1) Zip-A-Tee, Inc. become a Nike licensed supplier, (2) Nike buy Zip-A-Tee's two patents, trademarks and logo, or (3) settle out of court for discriminating against him. When Nike declined, Mr. Cross filed the present law suit alleging that it discriminated against him based on his race, in violation of Title VII and 42 U.S.C. § 1981, and had violated federal and state securities fraud laws. Nike moved to dismiss, contending that the complaint is factually and legally deficient. The court agrees.

In his response to the motion to dismiss, Mr. Cross abandons his Title VII, federal securities law claim, and state "deceptive trade" claims, but argues that he should be allowed to proceed on his claims under 42 U.S.C. § 1981 and Ind. Code §§ 23-19-5-1 and 23-19-5-5 (which relate to securities violations), or, in the alternative, to amend his complaint.[1]

"Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981). Although the allegations in Mr. Cross's complaint are ambiguous, he appears to allege that Nike used its submission policy as a pretext for discrimination, refused to enter into a contractual relationship with him because of his race, and caused him to lose profits and unidentified "benefits", in violation of 42 U.S.C. § 1981.

To survive Nike's motion to dismiss, Mr. Cross's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

---

[1] Mr. Cross was not employed by Nike and doesn't have standing to bring a claim under Title VII, 42 U.S.C. § 2000e *et seq.*, Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991) (Plaintiff "must prove the existence of an employment relationship in order to maintain a Title VII action against" defendant), and hasn't provided any factual basis for his federal security fraud claims. *See* Canadian Imperial Bank of Commerce Trust Co. v. Fingland, 615 F.2d 465, 466 (7th Cir. 1980) (affirming dismissal because complaint didn't allege facts sufficient to conclude securities were involved in the underlying dispute).

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While § 1981 applies to "would-be contractor[s]" like Mr. Cross, Domino's Pizza, Inc. v. McDonald, 546 U.S. at 476, the complaint doesn't allege any facts from which a court could reasonably infer that Nike refused to deal with him because he was black. To make a *prima facie* showing of discrimination under § 1981, Mr. Cross must show that he is a member of a minority group, that his submissions met the requirements of an available contract, that Nike rejected those submissions, and that "the contract was eventually given to an individual who is not a member of a protected class." Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991). He hasn't done that.

In place of facts, Mr. Cross relies on conclusory "the-defendant-unlawfully-harmed-me" allegations, and information from the internet relating to Nike's dealings with "white inventors" (R.L Beard and Jacobus Rentmeeter ) and "Caucasian corporations" (the NBA, NFL, MLB and NCAA). Legal conclusions aren't entitled to any presumption of truth, Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012), and Mr. Cross concedes in his complaint that his submissions didn't meet Nike's requirements. The court can't reasonably infer from any of the information contained in the exhibits attached to Mr. Cross's complaint that Nike refused to enter into a contract with him because he was black, or that its stated reason for not considering his design patents and trademark submissions wasn't a legitimate, non-discriminatory business decision based on a facially neutral corporate policy. Indeed, there's no indication that Nike was even aware of Mr.

Cross's race when it initially rejected his submissions in 2012 and 2014. *See* Holmes v. Potter, 384 F.3d 356, 362 (7th Cir. 2004) ("Usually, an employer's lack of knowledge about a protected category rings a death knell for discrimination claims."). To the extent Mr. Cross contends that Nike treated "white inventors" and "Caucasian corporations" more favorably under its policy, the exhibits attached to his complaint disprove that argument. The exhibits attached to the complaint show that Mr. Beard's patent was a utility patent, not a design patent, and that Nike's contractual relationships with Mr. Rentmeeter, the NBA, NFL, MLB, and NCAA weren't the result of unsolicited submissions and so weren't subject to the policy at issue in this case. Mr. Cross has effectively pleaded himself out of court. *See* E.E.O.C v. Concentra Health Services, Inc., 496 F.3d 773, 776-777 (7th Cir. 2007) (allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.").

Mr. Cross's claims under Ind. Code §§ 23-19-5-1 and 23-19-5-5 are also factually and legally unsupported. Those statutes relate to securities violations, and apply only to "the offer, sale, or purchase of a security." Ind. Code § 23-19-5-1 Mr. Cross's makes conclusory allegations of "fraud" and "deceit", but doesn't alleged any wrongful conduct that involved the offer, sale, or purchase of a security.

Mr. Cross moved to amend the complaint, in the event Nike's motion was granted, but Nike objects, contending that it would be futile to allow him to

pursue "unbelieveable" and "ridiculous" damages claims related to his "Zip-A-Tee" designs through meritless litigation. It cites in support the May 4, 2015 opinion and order in <u>Cross v. Coalition to Advance the Protection of NBA, NFL, MLB, NHL, and CLC LLC Sports Logos</u>, No. 2:14-CV-451, 2015 WL 2062661 (N.D. Ind. May 4, 2015), in which Judge Simon dismissed Mr. Cross's claim for declaratory relief and damages relating to his Zip-A-Tee shirts for lack of personal jurisdiction, but noted that his claim for $700 million in statutory damages was "unbelieveable", his claim for $ 5 billion in punitive damages was "ridiculous", and he hadn't stated a plausible claim for relief under federal patent laws, even if the court had personal jurisdiction.[2]

Fed. R. Civ. P. 15(a)(2) provides that leave to amend should be "freely give[n]", but only "when justice so requires." Mr. Cross hasn't identified any facts or viable legal theory that would support a claim for injunctive relief or damages based on Nike's refusal to consider his unsolicited ideas for designs and trademarks or to enter into a contractual relationship with him. Accordingly, the court finds that any amendment would be futile and denies the motion to amend.

---

[2] Judge Simon's characterization of Mr. Cross's damages requests applies equally in this case, in which he seeks $500 million for "lost profit and benefit" and $1 billion in punitive damages.

### III. Conclusion

For the foregoing reasons, the court GRANTS Nike's motion to dismiss [Doc. No. 10]; DENIES Mr. Cross's motion to amend [Doc. No. 18-1]; and DISMISSES this case, with prejudice. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   September 29, 2017

/s/ Robert L. Miller, Jr.
Judge, United States District Court
